**PETER ECKRICH AND SONS, INC.,**
**Plaintiff-Appellant,**

**v.**

**The SELECTED MEAT COMPANY et al., Defendants-Appellees.**

**No. 74-1045.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 19, 1974.

Decided March 27, 1975.

Hamilton Smith, Chicago, Ill., for plaintiff-appellant.

Barry L. Kroll, Chicago, Ill., for defendants-appellees.

Before SWYGERT and CUMMINGS, Circuit Judges, and WYZANSKI, Senior District Judge.[*]

PER CURIAM.

In March 1973, plaintiff, a meat processor with its principal place of business in Fort Wayne, Indiana, filed its second amended complaint, consisting of seven counts, against four corporate defendants.[1] One of the defendants, Waldock Packing Company, was subsequently dismissed on motion of plaintiff. The lawsuit was predicated on the delivery to plaintiff of allegedly rancid pork cheeks sold by defendant Selected Meat Company to defendant Beacon Food Products Corporation and, in turn, sold by Beacon through its agent, defendant Great Lakes Brokerage Company, to plaintiff. $226,782.51 in damages were sought because plaintiff assertedly had to destroy other meat with which the defective pork cheeks were mixed in processing luncheon meats and frankfurters at its plants in Fort Wayne, Indiana, Fremont, Ohio, and Kalamazoo, Michigan.

At the close of plaintiff's case, the court granted defendants' motions for a directed verdict. On appeal, plaintiff complains of evidentiary rulings of the trial court that "improperly excluded the guts of the plaintiff's case" (Plaintiff's Br. 18). We reverse.

*Exclusion of Batching Records*

Plaintiff sought to introduce batching records from its Fort Wayne, Indiana, Fremont, Ohio, and Kalamazoo, Michigan, plants to show that its Chicago pre-blend,[2] allegedly containing defendants' meat, was mixed into plaintiff's finished product at those three plants. As the trial judge noted, their absence from evidence would "short-circuit" plaintiff's case, for without them plaintiff could not show that its finished product had been contaminated by the incorporation of defendants' allegedly rancid pork cheeks.

These batching exhibits were excluded under the Business Records Act (28 U.S.C. § 1732) for lack of foundation. This was an over-narrow construction of the Act.

The records were identified by witness Walter E. Suever, corporate manager of technical standards and procedures for plaintiff in Fort Wayne at the time of the transactions in question. He testified that his department prepared these forms which were filled in by batching operators in the regular course of plaintiff's business. They were routinely kept as regular business records and were completed at batching time. Suever set up the procedure for maintaining those records and obtained them and kept them in his possession since September 1971. The district judge ruled that this was insufficient foundation under the Business Records Act. We disagree.

Suever's testimony was sufficient to attest to the authenticity of the records. As we held in United States v. Teague, 445 F.2d 114, 119 (7th Cir. 1971), the person who makes the records need not testify. The Act "was intended to eliminate the technical requirement of proving the authenticity of records and memoranda by the testimony of the maker." United States v. Olivo, 278 F.2d 415, 417 (3d Cir. 1960). In accord with

---

[*] Senior District Judge Charles Edward Wyzanski, Jr. of the District of Massachusetts is sitting by designation.

1. Jurisdiction was based on diversity of citizenship. Violations of Illinois and Ohio statutes were claimed.

2. Plaintiff's preblend is a mixture of meats which is further mixed with other ingredients to make various finished products, such as frankfurters and luncheon meat.

the liberal interpretation required for this statute (Palmer v. Hoffman, 318 U.S. 109, 115, 63 S.Ct. 477, 87 L.Ed. 645), it is apparent that these records were made pursuant to established company procedures, so that adequate hallmarks of their authenticity are present. They should have been received in evidence.

If the batching records had been in evidence, defendants have not denied that the documentary results of the rancidity tests conducted by plaintiff should have been admitted, nor have they denied the admissibility of plaintiff's exhibits purportedly showing that pork cheeks emanating from defendants were mixed at plaintiff's Chicago Plant 3 to produce 2XL preblend on September 7, 8 and 9, 1971. Indeed with the tie-in shown by the batching records, defendants concede the relevancy of the rancidity and preblend records, so that their exclusion need not be discussed herein.

*Exclusion of Plaintiff's Expert Witnesses*

On the fourth day of the trial, the court sustained an objection to the testimony of plaintiff's expert, Professor Sinnhuber of Oregon State University. Similar rulings were made with respect to proffered testimony of George Nischan, an instructor at the United States Army Medical Division Veterinarian School at Fort Sheridan, Illinois, and of George E. Brissey, a Californian who had been in charge of quality assurance for Swift & Company Meat Packers. The reason for excluding their testimony was plaintiff's failure to comply with the May 17, 1973, pretrial order requiring counsel for the parties to file with the clerk ten days before the scheduled trial date a list of names and addresses of all

expected witnesses. When the case was finally called for trial on October 1, 1973, none of the parties had filed a list of witnesses.

Defendants argue in this Court that "if the [district] court ruled correctly with regard to the exclusion of the experts' testimony for the reason that plaintiff failed to comply with the pretrial order, an independent reason exists for the direction of a verdict in defendants' favor at the close of plaintiff's evidence." (Appellee's brief at 5.) In order to establish causation, plaintiff was required to prove that the product which it received from defendants was tainted at the time that defendants delivered it to plaintiff's control. Plaintiff intended to prove that the meat was defective when it left defendants' control through expert testimony.[3] Since our review of the record confirms that there was no evidence actually received that tended to prove this essential point, it is necessary to decide if the district court's enforcement of the pretrial order was an abuse of discretion.[4]

The May 17th pretrial order instructed the parties to supply the court with a:

"List of names and addresses of *all witnesses* expected to testify for each party, indicating their capacity (occurrence, expert, etc.) and background qualifications. No foundation evidence other than appearing on the list will be permitted. Objection to calling or qualifications of any witnesses should be made in advance. *No witnesses will be allowed to testify who are not listed, except for good cause shown.*" (Emphasis added.)

3. The offer of proof of plaintiff's expert Sinnhuber contained a statement that, given both the storage conditions which plaintiff allegedly maintained for the product after it was delivered to its control and the level of rancidity allegedly revealed in plaintiff's test results, "it would be his opinion that the meat had been rancid before it was delivered to Peter Eckrich on September 2, and that the length of time which the meat had been rancid before it was delivered to Peter Eckrich was at least several months, if it had been previously stored under adverse conditions, or many months, if it had

been previously stored under normal conditions."

4. In directing the verdict in defendants' favor, the district court did not rely upon plaintiff's supposed failure to introduce sufficient evidence that the meat was rancid, nor upon any hole in plaintiff's case created by the exclusion of the business records. Rather, the district court specifically based its action upon the total absence of proof that the alleged rancidity was present in the meat when control over it passed from defendants to plaintiff.

We cannot acquiesce in the exclusion of Eckrich's expert witnesses under the guise of enforcing this pretrial order. In our view the short-circuiting of plaintiff's case in this manner was manifestly unjust and an abuse of discretion. To elucidate our reasoning, it is appropriate to present a statement of the facts we consider relevant.

This case was originally filed on December 1, 1971. Plaintiff, a meat processor, sought recovery against five corporations for damages occasioned by the delivery of rancid meat to plaintiff's plant in Chicago, Illinois. This complaint was twice amended, and in March 1973 four defendants remained: Selected Meat Company, Waldock Packing Company, Beacon Food Products Corporation, and Great Lakes Brokerage Company. The complaint alleged that Waldock had slaughtered certain hogs in 1971 and had obtained therefrom 80,000 pounds of pork cheeks which it sold to Selected, who in turn sold to Beacon, who in turn sold, through Great Lakes Brokerage, to plaintiff. The complaint further alleged that the meat in question was either fully rancid or in the preliminary stages of rancidity at the time it left the control of each of the defendants, and was therefore unreasonably dangerous at all relevant times. Finally, it was alleged that this rancid meat was combined with other meat after its receipt by plaintiff, and that as a consequence an entire batch of blended meats was contaminated and destroyed.

On May 17, 1973, a pretrial conference was held and the cause set for a jury trial on Wednesday, June 20, 1973. The record does not indicate the length of this conference. On the same day, a final pretrial order was entered. This order was in fact a form order apparently devised to eliminate the necessity of drafting an order for each particular case. It broadly required counsel in the case to file with the courtroom clerk: 1) stipulations as to all uncontested material facts; 2) stipulations as to the authenticity of all uncontested documents and a list of all documents to be introduced, together with objections of either party as to admissability; 3) a list of all witnesses to be called, with addresses, nature of expected testimony, and qualifications, if any; 4) a list of any depositions to be used, with any objections thereto by the opposing party; 5) a list of all contested issues of fact and law; 6) memoranda of authorities on all contested issues of law; 7) a memorandum "in the form used by the Circuit Court of Cook County, Illinois" on liquidated damages, if claimed; and 8) proposed jury instructions with authorities noted thereon.[5] All of this information was to be filed with the clerk ten days before trial, according to the form order.[6]

After the pretrial order was entered, discovery continued until June 8, 1973, when Eckrich moved to have the trial reset to a later date. The trial was reset to July 16, 1973. On July 6, 1973, Eckrich again appeared to request confirmation of the July 16th setting. Eckrich's counsel informed the court that he intended to call several out-of-town witnesses and that he was therefore interested in nailing down the trial date, if possible. Counsel for the defendants indicated that he had not had time to read the file in the case and was therefore unable to predict whether settlement might be achievable. The trial judge responded by stating that if the case could not be settled, it would have to be tried as scheduled. He noted that the case was second on the call for the 16th and that as far as he knew, no continuance had been requested in the first case. He suggested that the parties check with counsel in the first case to determine whether that case would go ahead.

On July 11, 1973, counsel for defendants filed a motion for continuance. An

---

**5.** In addition to this form order, a "Stipulated Protective Order on Dissemination of Confidential Material" was also entered on May 17th. Significantly, this protective order was signed by counsel for the parties whereas the form pretrial order was not so acknowledged.

**6.** No information whatever was filed by either of the parties pursuant to this order.

affidavit accompanying the motion indicated that certain of defendants' witnesses, including two experts never before disclosed to plaintiffs, would be unavailable on the 16th. Counsel for plaintiff informed the court that the first case on the trial call for the 16th was set to go ahead, according to counsel for the plaintiffs in that case. The trial judge then stated that he was reluctant to let this case "go over" and suggested that it be held on status call. Counsel for plaintiff pointed out he had several out-of-town witnesses, including two on the West Coast, and indicated problems might crop up unless he had some notice prior to the commencement of trial. The situation was finally resolved by making the 16th a status call with the assurance that there would be at least a "couple of days" advance notice before any evidence would be taken so that witnesses could be lined up and brought in from various parts of the country. No mention was made at this hearing about the pretrial order.

On July 16, 1973, the parties again appeared by counsel and were informed by the trial judge that the first case appeared to be going ahead although the situation was not entirely clear. When counsel for plaintiff again raised the problem with witnesses, the trial judge responded, "I realize that you have a problem of out of state and vacationing witnesses and various other problems * * *. I will take those into consideration." Further discussion ensued and at the conclusion of the status call the judge again returned to the subject of witnesses: "I am not going to put you in a position where you can't get your witnesses in. I am going to give you consideration on that." The case was retained on the status call and again no mention was made concerning the pretrial order.

On the following day counsel again appeared before the judge. Plaintiff's problem in scheduling out-of-town expert witnesses was once more discussed. At this juncture defendants' counsel also mentioned misgivings due to expert witness problems. After some discussion it was agreed that if the trial then in progress was not concluded in another day, the Eckrich case would be put over until fall.

On July 26 another status call was had at which the trial judge confirmed that the case could not be tried until fall. Counsel for plaintiff inquired as to a possible date, indicating once again that he had two "West Coast experts" who would be testifying. The trial judge responded that the case could not be tried until "late October or November * *. You will be lucky if this goes to trial by Christmas time."

On September 17, 1973, counsel for plaintiff appeared with a motion to "quash" notices of deposition filed by defendants or to set a date certain for cutting off further discovery. The trial judge denied this motion. He stated that he did not know when the matter would go to trial but that he was not in the practice of limiting discovery prior to trial in any event:

> THE COURT: I do let discovery continue right up to trial—in fact, it sometimes continues even during trial —because, for one reason, people think of things after they get into a file clearly enough for trial. I cannot see any reason from the face of your motion to preclude discovery or to enter an order cutting it off.

The court also indicated at this hearing that "the chances of trying this case before late this year are very small."

On September 25, 1973, a minute order was entered setting the trial for October 1, 1973, just six days subsequent. Until this order, none of the parties had any reason to expect the case to go to trial until some weeks later.

On October 1 the trial was called. Counsel for plaintiff requested a conference:

> MR. SMITH: [counsel for plaintiff] I wonder if I could request a conference, Your Honor.
> THE COURT: What is the problem?
> MR. SMITH: Well, I would like to inquire about stipulations and a couple

of matters and I would like to get some idea if I can, who their witnesses are going to be.

THE COURT: Well have you gentlemen complied with the pretrial order?

MR. MONTGOMERY [counsel for defendants]: There is no pretrial order, Your Honor.

MR. SMITH: There is none.

THE COURT: A pretrial order was entered but I have not found any compliance with it. That was entered on —well, it is in the file here. Here it is. That was entered on May 17.

\*  \*  \*  \*  \*  \*

These pretrial orders are very carefully prepared by me, at least, and I expect the attorneys to do the same thing. When I get no pretrial compliance I am not going to be very sympathetic with delays or requests for pretrial conferences or anything else, frankly.

Bring in the venire.

MR. SMITH: I was not making a request for a pretrial conference, at least I did not think I was. I am prepared. We have a witness list.

At this point Mr. Montgomery indicated that he did not know of any witnesses of plaintiff other than occurrence witnesses and that defendants would object to witnesses not disclosed in previous interrogatories. He also represented that defendants had disclosed all of their witnesses in answer to interrogatories of plaintiff. This was not true. Plaintiff had never even asked for a witness list in previous interrogatories. At no time did defendants identify any witnesses except in an affidavit submitted with the July 11 motion for a continuance. In that affidavit defendants referred to two specific experts, but did not indicate that this was an exclusive list of expert witnesses.[7]

After this colloquy, the trial began. On the fourth day of trial plaintiff called Professor Russell O. Sinnhuber of Oregon State University. Professor Sinnhuber was prepared to testify as to the rancidity tests used on the meat in question and their meaning relative to the rancidity of the meat when received by Eckrich. Counsel for defendants, Mr. Montgomery, objected to the admission of this testimony on the ground that Sinnhuber's name did not appear in plaintiff's response to defendants' interrogatories on the subject of occurrence witnesses. The district judge overruled this objection, stating that the interrogatories referred to by the defense did not cover expert witnesses. Mr. Montgomery then objected on the basis that other interrogatories, which did ask for a list of expert witnesses, were answered late. The exchange which followed erroneously assumed that Mr. Montgomery was correct and that these answers had been filed two days beyond the deadline. In fact, they were timely filed since the calendar date for return fell on a Saturday and the answers were filed on the following Monday, the first day of trial. In his final ruling the district judge indicated that regardless of any misunderstanding on the due date for the interrogatories, the pretrial order was not complied with, and the objection was therefore sustained.

An offer of proof was made as to Sinnhuber's testimony as well as that of two other experts who were excluded for failure to comply with the pretrial order.

■ A review of these facts convinces us that the exclusion of Eckrich's expert witnesses was an abuse of the discretion of the trial judge. Rule 16 was never intended to be a trap for unwary counsel and their litigants. The rule itself indicates that these conferences are held in order to produce agreement among the parties and the trial judge as to the

---

**7.** In their brief defendants rely on answers to certain interrogatories filed by defendants on April 4, 1973. These interrogatories had nothing to do with disclosure of witnesses. They were instead directed to previous testing of plaintiff's meat samples by defendants. Certain persons involved in these testing procedures were identified in the answers, but no indication was given that any of the persons identified would or might be witnesses at trial, and of course there was no hint that this would be an exclusive list of witnesses.

scope of the issues in the particular case and the admission of uncontested items of evidence. The order which follows such conferences is intended to be tailored to the particular case and to reflect "agreements made by the parties." Here the pretrial order was little more than boilerplate, and a reading of the transcript indicates that none of the parties to this suit was even aware of the order at the time the trial began.[8]

The pretrial order was never mentioned by the trial judge or the parties until the first day of trial. In the numerous status calls and motion hearings the parties and the trial judge recognized and discussed the necessity for expert witnesses and plaintiff's counsel specifically mentioned his two "West Coast experts." The judge assured the parties that he would give them "consideration" in this regard. These assurances were made in July when the trial was being held on a day to day status call. No pretrial witness list was on file at that time.

Finally, until September 25, 1973, the parties and the trial judge assumed the trial would not begin until late in October or beyond. Compliance with the order's ten-day time provision was simply impossible when notice of the trial date came only six days in advance, and as far as the record shows, as a complete

surprise. Defendants seemingly rely on the fact that the pretrial order was violated in July when no information was on file within ten days of the July 16th trial setting.[9] But whether or not failure to comply within the month of July would have justified action at that time to exclude all expert witnesses or to dismiss plaintiff's case, a proposition we find doubtful, reliance on that period of technical noncompliance in the present circumstances is unreasonable and unfair. Since July the litigants in this case have shouldered the expense of additional discovery, trial preparation, and four days of trial. In addition the plaintiff has suffered the expense and embarrassment of flying its "West Coast experts" to Chicago only to have them excluded on the basis of a pretrial order never complied with by defendants. We believe that litigants in a federal court deserve better than this.

It is often said that a trial is not a game of tactics, but a proceedings designed to achieve substantial justice among the parties. Here the trial was a game, and thus resulted in a denial of substantial justice to the plaintiff because it was essential to its case to have expert testimony.

Reversed and remanded for a new trial.[10]

---

**8.** Although counsel for plaintiff did state that he believed that preparations were underway to comply with the order in June or July, we are convinced that none of the parties was in a position to comply with the order in June or at any other time. As of July 6, 1973, counsel for the defendants had not even read his file on the case. Since the order directed the parties to coordinate the submission of the mass of materials and agreements required therein "without court participation", counsel for plaintiff, even if fully prepared, would have been hard pressed to achieve even token compliance with the order at that time.

**9.** We cannot refrain from pointing out that defendants are in a rather peculiar position to be relying on this period of non-compliance since the record is clear that on the 6th of July, ten days prior to the setting on the 16th, defendants' counsel had not yet read the discovery papers on file in the case. Aside from the apparent inequity in enforcing the order against the plaintiff under these circum-

stances, there would be a real danger that in future cases defendants will be encouraged to promote non-compliance since mutual failure can only accrue to their benefit: If the order is enforced, then plaintiff never makes his case and defendant wins; if the order is not enforced, then defendant proceeds with his case as if there had never been a pretrial order.

**10.** The cases cited by the defendants are distinguishable from this case. In Napolitano v. Compania Sud American de Vapores, 421 F.2d 382, 385–86 (2d Cir. 1970), lists were exchanged by the parties and one of the parties attempted at the last minute to add seven witnesses to a list which had previously disclosed the identity of only one witness. In Heilig v. Studebaker Corp., 347 F.2d 686, 690 (10th Cir. 1965) plaintiff attempted to introduce a previously undisclosed witness in the face of a pretrial order signed by the parties and after plaintiff had rested his case.