**OHIO–SEALY MATTRESS MANUFAC- TURING COMPANY et al., Plaintiffs,**

v.

**Morris A. KAPLAN et al., Defendants.**

**No. 76 C 0810.**

United States District Court, N. D. Illinois, E. D.

Feb. 4, 1981.

---

Frederick F. Brace, Jr. and William H. Tobin, Sidley & Austin, Chicago, Ill., for plaintiffs.

Howard Koven and Phil C. Neal, Friedman & Koven, Samuel Weisbard, McDermott, Will & Emery, John H. Matheson, Hedlund, Hunter & Lynch, Edward I. Rothschild, Rothschild, Barry & Myers, Max Wildman, Wildman, Harrold, Allen & Dixon, Richard K. Wray, Arnstein, Gluck, Weitzenfeld & Minow, Henry S. Kaplan, Dressler, Goldsmith, Shore, Sutker & Milnamow, Eli E. Fink, Fink, Coff & Stern, Albert D. Jenner, Jr., Jenner & Block, Robert H. Joyce, Seyfarth, Shaw, Fairweather & Geraldson, Michael W. Coffield and Gregory A. Friedman, Coffield, Ungaretti, Harris & Slavin, Chicago, Ill., Fred B. Miller, Portland, Or., Louis B. Garippo, Thomas J. Campbell, Winston & Strawn, James E. Hastings, Chadwell, Kayser, Ruggles, McGee & Hastings, Stanley B. Block, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

On August 1, 1980, this Court issued a Memorandum Opinion and Order that had the effect of limiting and defining the scope of the issues presented in this action. *Ohio-Sealy Mattress Manufacturing Co. v. Kaplan*, 90 F.R.D. 11 (N.D.Ill.1980). Thereafter, the parties, in an effort to expedite resolution of this action, filed with the Court memoranda outlining their views on the remaining issues. *See Defendants' Memorandum Re Issues Remaining in the Case*, filed September 5, 1980; *Plaintiffs' Memorandum Re Issues Remaining in the Case*, filed September 9, 1980. These views were discussed at pretrial conferences held September 17, 1980, and November 24, 1980, at which time the Court ordered that the parties prepare a joint document listing the issues remaining in the case and recommending procedures for their resolution. In compliance with this order, the parties on January 15, 1981, filed a twenty-page "Schedule of Issues."[1] At another pretrial conference conducted one week later, the

Court discussed with the parties the possibility of settling some of the remaining issues and the effect that the Schedule of Issues would have on the future course of this litigation.

By this order today, which marks the culmination of the issue-narrowing process described above, the Court (1) precludes any of the parties to this action from raising issues not presented in the Schedule of Issues and clarifies the scope of certain issues remaining in dispute; (2) sets forth briefing schedules for certain matters raised in the Schedule of Issues; and (3) defers consideration of other matters pending settlement discussions.

### I. *Preclusion Order*

#### A. Issues Not Raised in Schedule

Fed.R.Civ.P. 16 authorizes a trial judge to "direct the attorneys for the parties to appear before it for a conference to consider (1) simplification of the issues...." Rule 16 further provides that a preclusion order resulting from a pretrial conference "controls the subsequent course of the action, unless modified at the trial to prevent manifest injustice." While the pretrial conference pursuant to Rule 16 may serve several functions, perhaps its most important goal is the limitation and simplification of issues in order to avoid unfair surprises to litigants as well as to promote judicial efficiency. 3 Moore's Federal Practice, ¶¶ 16.02 at 7, 16.11 at 22. This is especially true in complex, protracted litigation such as this. *See e. g. Commonwealth Edison Co. v. Allis-Chalmers Manufacturing Co.*, 245 F.Supp. 889, 899 (N.D.Ill.1965); Manual for Complex Litigation §§ 1.11 at 16, 4.23 at 147. Rule 16, of course, should not be used as a trap by which "unwary counsel" are precluded from raising issues. *Peter Eckrich & Sons, Inc. v. Selected Meat Co.*, 512 F.2d 1158, 1163 (7th Cir. 1975) (district court erred in precluding introduction of evidence pursuant to a pretrial order of which counsel were unaware until the day of trial).

1. On January 28, 1981, defendant Howard Haas filed, with leave of the Court, an Addendum to the Schedule of Issues. In referring to the

"Schedule of Issues" throughout this Order, the Court incorporates the Addendum as well.

But courts have not hesitated to require strict adherence to the limitation of issues contained in pretrial orders that are the product of trilateral communication between the parties and the court. *See e. g. Wood v. Old Security Life Insurance Co.*, 617 F.2d 1158, 1163 n.9 (5th Cir. 1980); *Seneca Nursing Home v. Secretary of Social and Rehabilitation Services of Kansas*, 604 F.2d 1309, 1314 (10th Cir. 1979); *Ely v. Reading Co.*, 424 F.2d 758, 763 (3d Cir. 1970).

In this case, the parties have filed documents and participated in three separate conferences with this Court for the purpose of identifying and simplifying the issues remaining in this action. At the most recent conference, on January 22, 1981, the Court specifically apprised the parties of its intent to treat the Schedule of Issues as a comprehensive and exclusive compilation of all remaining issues. *Transcript of Pretrial Conference*, at 6 (January 22, 1981). None of the parties objected to this. Accordingly, the Court exercises its authority pursuant to Rule 16 and orders that the parties are precluded from raising any matters not presented in the Schedule of Issues.[2]

### B. Issues Arguably Decided in Prior Rulings

A number of issues raised by the parties in the Schedule of Issues call into question the effect of the Court's past decisions in this action. In particular, the parties disagree as to the proper interpretation of the Memorandum Opinion and Order dated August 1, 1980. Defendants assert that the decision precludes plaintiffs from seeking any relief for most of the conduct alleged in Count I and all of Counts II–IV. Plaintiffs construe the decision as precluding only those claims for damages based on acts occurring prior to the April, 1975, jury verdict in *Ohio-Sealy Mattress Manufacturing*

*Co. v. Sealy, Inc.*, 71 C 1243 (N.D.Ill.); they continue to assert the right to seek relief for post-verdict actions alleged in those counts as well as equitable relief for pre-verdict actions. Thus, at the outset, the Court must clarify the scope of the August 1 decision.

The critical issue before the Court at that time was whether the defendants could "preclude Ohio from recovering post-verdict damages resulting from pre-verdict acts alleged in Counts I–IV and VI of the Amended Complaint." At 14. After extensive analysis the Court found that defendants could do so, stating that "[t]he effect of this ruling is that Ohio may not seek post-verdict damages for any acts that occurred prior to the verdict in the 1971 action." At 20. This decisional language, which defines the scope of the August 1 decision, does not purport to affect plaintiffs' right to seek post-verdict relief for those damages stemming from post-verdict actions. Accordingly, notwithstanding contrary inferences that might be drawn from this and later opinions,[3] the August 1 decision does not preclude plaintiffs from seeking post-verdict relief for those acts alleged in Counts I–IV and VI that occurred after the jury verdict in the 1971 case. It does, of course, preclude plaintiffs from seeking any post-verdict damages for pre-verdict conduct. In addition, plaintiffs are precluded from seeking post-verdict equitable relief for pre-verdict conduct, on the basis either of abstention, at 15 n.9 or of the res judicata effect to be accorded to Judge Parsons' ruling on the equitable relief sought in the 1971 case. *Ohio-Sealy Mattress Manufacturing Co. v. Sealy, Inc.*, 71 C 1243 (N.D.Ill., December 1, 1980). It is on the basis of this interpretation of the August 1 decision that the Court will consider the points raised by the parties in the Schedule of Issues.

---

**2.** In Section XII. of the Schedule of Issues, plaintiffs assert that defendants should be precluded from asserting any issues they failed to list in the summary they included as Exhibit A. The Court, however, does not believe that this four-page outline should govern over the detailed, twenty-page document which it seeks to summarize. Therefore, this portion of the pre-

clusion order pertains to those issues not listed in the twenty-page schedule and addendum, not to those omitted by the summary.

**3.** *See Ohio-Sealy Mattress Manufacturing Co. v. Kaplan*, at 20 (N.D.Ill.1980); at 24 n.4 (N.D.Ill.1980).

In Section II.B.1 of the Schedule, plaintiffs assert the right to seek lost profits resulting from defendants' use of the right of first refusal to prevent plaintiffs from acquiring plants in Florida, Pittsburgh, and Philadelphia. Amended Complaint, ¶ 92(a). Similarly, in Section II.B.2, plaintiffs contend that they still may seek to recover lost profits allegedly stemming from defendants' refusals to allow them to locate a plant in Toledo. Amended Complaint, ¶ 92(b). These acts, however, all occurred well before the 1975 jury-verdict. Defendants allegedly used their right of first refusal to purchase the Florida and Pittsburgh plants in 1972, and the Philadelphia plant in 1973. Amended Complaint, ¶¶ 25–27. They allegedly rebuffed plaintiffs' attempt to locate a plant in Toledo in 1971 and again in 1973. Amended Complaint, ¶¶ 34(b), 44. Damages for this pre-verdict conduct clearly are foreclosed by the August 1 decision.[4]

In Section II.D. of the Schedule, plaintiffs contend that they may pursue in Count I the equitable relief of elimination of the various licensing restrictions readopted and enforced by defendants after the 1975 jury verdict as well as divestiture of certain Sealy acquisitions.[5] At various points in the Amended Complaint plaintiffs allege conduct that occurred after the jury verdict: the readoption of a restrictive licensing agreement (¶¶ 67, 70–71); improper use of royalty payments (¶¶ 73–78); and the use of passover and warranty payments (¶¶ 79,

82–83, 85). The August 1 decision does not preclude plaintiffs from seeking equitable relief based on that conduct; nor does Judge Parsons' recent ruling on equitable relief bar such a claim, since his ruling was based on the pre-verdict conduct at issue in that case. Slip op. at 29–30. The Court, however, does note that Sealy, as part of the equitable relief in the 1971 case, has agreed to eliminate certain of the licensing restrictions complained of by plaintiffs herein. The extent to which this agreement moots certain of the relief sought by plaintiffs is a matter which defendants may raise by appropriate motion.

As for the requested relief of divestiture, the Amended Complaint alleges that the acquisitions of Denver, Northern California, Southern California, and Phoenix all occurred prior to the 1975 jury verdict. ¶¶ 21–24. For this reason, the August 1 decision precludes plaintiffs from seeking divestiture of those acquisitions.[6] The request for divestiture as to Des Moines and Reading, however, both of which were acquired in 1978, Amended Complaint ¶ 28, is not precluded by the August 1 decision. The other two acquisitions for which plaintiffs seek divestiture in Count I—Lexington and Portland—are not mentioned in the Amended Complaint. Whether they may be subject to divestiture as part of the relief in Count I will depend on the Court's ruling on the issue raised in Section I.A. of the Schedule—whether plaintiffs may seek relief for acts occurring up to April 24, 1978, or up to the date of trial in this action.

---

4. Indeed, in that opinion the Court specifically rejected the arguments that defendants' failure to abate the inertial consequences of its pre-verdict conduct constituted post-verdict action, and that other post-verdict conduct provided a possible basis for awarding post-verdict damages stemming from pre-verdict conduct. At 19 and n.5.

5. Plaintiffs also urge that they may seek injunctive relief prohibiting defendants from terminating their licenses if plaintiffs manufacture bedding in Sealy territory, and requiring defendants to arbitrate certain matters. Defendants do not assert that these requests are precluded by the August 1 decision, but rather that they already are being litigated in other counts of this action or in related lawsuits. In any event, the parties agree that consideration of

these matters of equitable relief should be deferred, a judgment in which the Court concurs. Thus, consideration of these matters, as well as the rest of the issues in Section II.D. not precluded by this Order, will be deferred. *See* Part III., *infra*.

6. This is the case irrespective of whether divestiture is considered legal relief, *Ohio-Sealy Mattress Manufacturing Co. v. Sealy, Inc.*, 71 C 1243, Slip op. at 16–18 (N.D. Ill., December 1, 1980), or an equitable remedy. If treated as the former, the relief is barred by the August 1 decision, at 20. If construed to be the latter, the relief is precluded by the abstention doctrine, at 15 n.9, or the effect of Judge Parsons' opinion issuing equitable relief in the 1971 case.

In Section III. of the Schedule of Issues, plaintiffs contend that they still may seek equitable and legal relief for the violation alleged in Count II of the Amended Complaint—interlocking directorates in violation of 15 U.S.C. § 19. In this count, plaintiffs allege that the challenged conduct occurred from the 1920's until April, 1978. Amended Complaint, ¶¶ 100, 102. To the extent that plaintiffs might seek to establish a violation premised on pre-verdict conduct, they are precluded from doing so by the August 1 ruling. Neither that decision nor any that followed, however, prevent plaintiffs from seeking relief based on post-verdict conduct.

In Section IV. of the Schedule of Issues, plaintiffs assert their right to seek legal and equitable relief under 15 U.S.C. § 18 for both pre- and post-verdict acquisitions. This request, although posited under a differing theory of liability, is substantially the same as the request to pursue relief for the damages alleged in ¶ 92(a) of the Amended Complaint, and more generally the request for equitable relief in Count I. For the reasons stated above with respect to those issues, the Court finds that the August 1 decision precludes the request for relief as to acquisitions that predated the 1975 jury verdict.[7] Plaintiffs, however, still may pursue relief for the 1978 purchases of Des Moines and Reading.

In Section V. of the Schedule of Issues, plaintiffs argue that they still may seek relief for the violation alleged in Count IV of the Amended Complaint. This state law claim, however, pertains to Sealy's 1973 acquisition of the Philadelphia plant; it is merely another theory under which plaintiffs claim that this pre-verdict acquisition was unlawful. Thus, for the reasons outlined above, plaintiffs are precluded from seeking relief under this count.

Finally, in Section VI of the Schedule of Issues, defendants assert that they still may pursue their standing and fair and adequate representation defenses to the derivative claim in Count V of the Amended Complaint. In *Ohio-Sealy Mattress Manufac-*

turing Co. v. Kaplan, 90 F.R.D. 21 (N.D. Ill.1980), however, the Court at some length considered and rejected defendants' legal arguments in support of their fair and adequate representation defense. At 24–27. Accordingly, the Court finds that defendants are precluded from raising this defense. To the extent that defendants possess an independent argument based on standing, of course, the September 17 opinion in no way precludes them from asserting it.

To summarize, the Court finds that plaintiffs are precluded from seeking relief on the following claims:

| | |
|---|---|
| Section II.B.1 | Amended Complaint, ¶ 92(a) |
| Section II.B.2 | Amended Complaint, ¶ 92(b) |
| Section II. D(a),(b) | All pre-verdict conduct alleged in Amended Complaint, Count I |
| Section III. | All pre-verdict conduct alleged in Amended Complaint, Count II |
| Section IV. | All pre-verdict conduct alleged in Amended Complaint, Count III |
| Section V. | Amended Complaint, Count IV |

Defendants are precluded from raising the fair and adequate representation defense to Count V of the Amended Complaint.

## II. *Briefing Schedules*

The Court already has set briefing schedules on a number of the issues that require further consideration. They are as follows:

| | |
|---|---|
| Section I.A. Section II.B 5, 6, 7, 8, 9 | Plaintiffs to file for leave to file second amended and supplemental complaint with supporting memorandum by February 3, 1981; defendants to respond by February 10, 1981. |
| Section I.B. | Defendants to file for leave to file supplemental counterclaim with supplemental memorandum by February 3, 1981; plaintiffs to respond by February 10, 1981. |
| Section II.B.3 | Defendants' motion for summary judgment of Amended Complaint, ¶ 92(c), with supporting memorandum has been filed; plaintiffs have responded; defendants to reply by February 6, 1981. |
| Section II.B.4 | Defendants to file motion for summary judgment and supporting memorandum on Amended Complaint, ¶ 92(d), by February 15, 1981; plaintiffs to respond by |

7. *See* note 4 and accompanying text, *supra*.

| | |
|---|---|
| | February 25, 1981; defendants to reply by March 3, 1981. |
| Section VII. | Plaintiffs' motion for partial summary on Amended Complaint, Count VI, is fully briefed; defendants have filed a motion for partial summary judgment on Count VI, plaintiffs have filed a memorandum in opposition, and defendants are to reply by February 6, 1981. |
| Section XI. | Plaintiffs' "Motion Re Counterclaim" is fully briefed; defendants have filed a motion for summary judgment on counterclaim, plaintiffs have filed a memorandum in opposition, and defendants are due to reply on February 6, 1981. |

In addition to these schedules, the Court sets the following timetable for defendants to move for summary judgment on the issues in Counts I–IV of the Amended Complaint that the Court has found not to be precluded by earlier rulings:

| | |
|---|---|
| Section II.D. (a), (b) (post-verdict conduct) Section III. (post-verdict conduct) Section IV. (post-verdict conduct) | Defendants to file motion(s) for summary judgment with supporting memorandum by February 16, 1981; plaintiffs to reply by February 26, 1981; defendants to reply by March 4, 1981. |

### III. *Issues Deferred*

There are a number of issues of which the Court defers consideration due to the pendency of settlement discussions or of other related matters which might render these issues moot. They are as follows:

| | |
|---|---|
| Section II.A. | Liability on Amended Complaint, Count I |
| Section II.D. | Equitable relief on Amended Complaint, Count I |
| Section VI.A., B., C. | Liability and relief on Amended Complaint, Count V |
| Section VII.A., B. | Liability and relief on Amended Complaint, Count VI (Components Claim) |
| Section VIII. | Adjustment of any damage award for inflation |
| Section IX. | Amount of pre-judgment interest |
| Section X. | Attorneys' Fees |
| Section XI. | Defendants' counterclaim for royalties |
| Addendum | Haas motions directed to Amended Complaint |

In addition, the parties in Section II.C. of the Schedule have agreed upon a method of resolving the dispute over the amount of damages at issue in Count I.

Accordingly, pursuant to this Order, the Court expects the parties to brief the outstanding issues in compliance with the established schedules, at which time the Court will issue rulings in a timely fashion. Thereafter, the Court will turn its attention to those issues now deferred, to the extent that they remain viable. The Court will not consider any issues not listed in the Schedule of Issues, and reflected in this Order today. The Court also urges the parties to actively pursue current settlement discussions and to advise the Court promptly as to the results of those negotiations and as to whether the settlement discussions have been broadened to cover other issues. It is so ordered.

