John C. **BARRIER** and Laverne **Barrier**

v.

The **UNITED STATES.**

No. **336–76.**

United States Claims Court.

Feb. 23, 1983.

Robert E. Kovacevich, Spokane, Wash., for plaintiff.

Israel D. Shetreat, Washington, D.C., with whom was Asst. Atty. Gen. Glenn L. Archer, Jr., Washington, D.C., for defendant.

## OPINION

WOOD, Judge:

This action, to recover federal income tax, penalties, and interest of approximately $92,000, alleged to have been erroneously assessed against and collected from plaintiffs for the calendar year 1972, is presently before the court following trial limited to a single issue raised by way of offset in defendant's answer to the first amended petition filed herein June 10, 1981. The issue tried is the "inventory issue," defined in an order filed February 26, 1982, and discussed and decided below.[1]

For the reasons hereinafter appearing, it is concluded that plaintiffs' complaint should be dismissed.

---

1. The February 26, 1982, order allowed defendant's motions re separate trial and burden of proof. *See Union Pacific R.R. v. United States,* 208 Ct.Cl. 1, 73, 524 F.2d 1343, 1382–83 (1975) *cert. denied,* 429 U.S. 827, 97 S.Ct. 83, 50 L.Ed.2d 89 (1976); *Missouri Pacific R.R. v.* *United States,* 168 Ct.Cl. 86, 338 F.2d 668 (1964). In support of the motions, defendant made a clear showing both that it had a reasonable basis for raising the offset defense and that a separate trial limited solely to the "inventory issue" was appropriate.

## I

At all times here relevant, plaintiffs, cash-basis taxpayers residing in Spokane, Washington, owned all of the shares of stock of Corrugated Metals Inc. (CMI). CMI was an "electing small business corporation" within the meaning of section 1371(b) of the Internal Revenue Code of 1954, as amended, and was an accrual basis taxpayer reporting its income on the basis of a fiscal year ending February 28 (or 29).[2]

In 1971 and 1972, CMI processed metal coils or strips of very thin material, perhaps as much as a mile in length and weighing two to two and a half tons, into corrugated sheets. CMI purchased substantially all of its inventory of metal coils for use in its business from Nissho-Iwai (Nissho), a Japanese company. CMI operated in both Spokane and Seattle, Washington, and stored inventory in warehouses located in both cities. CMI's main storage facility was located in Seattle; its main fabricating facility was located in Spokane.

Throughout the period here relevant, CMI took inventory periodically. In the process, a CMI employee (normally a branch manager) physically counted the materials on hand in each of the CMI warehouses in Spokane and Seattle. The count at each warehouse was then recorded on a standard form. In some instances, at least, the value of the inventory reflected on a particular standard form was calculated by plaintiff John C. Barrier (Mr. Barrier) and noted on that form. During the period 1971–72, CMI's inventory valuation method was to value metal coils at 50 percent of cost, and for present purposes the propriety of that method of inventory valuation is not questioned.

2. All statutory references herein are to the Internal Revenue Code of 1954, as amended, as in force during the relevant period.

3. The timeliness of the filing of plaintiffs' federal income tax return for 1972 is not here questioned.

4. If CMI's original return for 1972 was audited by the Internal Revenue Service, no adjustments to CMI's inventories as reported were then made. If plaintiffs' original return for

For its fiscal year ending February 29, 1972, CMI filed a Form 1120, U.S. Small Business Corporate Income Tax Return, dated August 10, 1973, and reflecting a taxable income of $102,733. In plaintiffs' joint federal income tax return for the calendar year 1972, also dated August 10, 1973, plaintiffs, as owners of all of CMI's stock, included CMI's reported taxable income of $102,733 for the fiscal year ending February 29, 1972, as dividend income.[3]

In September 1974, CMI filed an amended federal income tax return reflecting a taxable income of $55,755 for its fiscal year ending February 29, 1972. Both CMI's original return for 1972 and its amended return for that year reported a beginning inventory of $25,703, and an ending inventory of $37,384.[4] Plaintiffs now concede that the latter figure was and is understated (but urge that the former one should also be found to be). In an amended joint federal income tax return for the calendar year 1972, also filed in September 1974, plaintiffs reported (among other things) income from CMI of only $55,755, and claimed a refund of taxes allegedly overpaid for the calendar year 1972 of $20,678.

In August 1976, plaintiffs filed this action to recover that amount, plus interest. In November 1976, shortly after filing its answer herein, defendant successfully sought a suspension of proceedings pending completion of an extensive investigation by the Internal Revenue Service into plaintiffs' tax affairs, including the federal tax returns of plaintiffs and CMI for the year 1972.

In April 1979, that suspension of proceedings was vacated. On August 14, 1979, following examination by the Service of

1972 was audited, the Service did not then "adjust" plaintiffs' reported income from CMI because of changes in CMI's reported inventories. Just what did happen prior to the filing of amended returns in 1974 is far from clear. In 1979 audits of plaintiffs' and CMI's amended federal tax returns for 1972, the ending inventory reflected in CMI's amended return for the fiscal year ending February 29, 1972, was not questioned.

plaintiffs' 1972 amended return and claim for refund,[5] a notice of deficiency, assessing additional federal income taxes for 1972 of $27,841.93, plus a penalty of $32,002.47 pursuant to section 6653(b), was issued to plaintiffs. In accordance with section 7422(e), proceedings were thereupon "stayed for the period of time in which the taxpayer may file a petition with the Tax Court * * * and for sixty days thereafter."

On January 11, 1980, defendant duly filed an amended answer and counterclaim seeking to recover the amount of income tax and penalty assessed against plaintiffs August 14, 1979, plus interest thereon. Thereafter, plaintiffs paid the amounts asserted by defendant to be due and owing for the calendar year 1972[6]; timely filed a claim for refund; and, upon disallowance of that claim by the Service, sought and received leave to amend their complaint herein so as to encompass the amounts paid by plaintiffs pursuant to the August 14, 1979, notice of deficiency. Plaintiffs' amended petition, filed June 10, 1981, claimed some $92,000, plus statutory interest.

Defendant's amended answer, filed August 27, 1981, asserted by way of affirmative defense that CMI's ending inventory for the fiscal year ending February 29, 1972, had been substantially understated; that by virtue of the understatement CMI's taxable income had been understated by $236,575 on its 1972 tax return; and that this, in turn, had resulted in an understatement of plaintiffs' income on their 1972 federal income tax returns and in an underpayment by plaintiffs of $133,184 in federal income tax for that year. Defendant's amended answer further asserted that in the event any of plaintiffs' claims should be sustained, the amount of any recovery due them in this suit should be reduced and offset by the said underpayment in tax.

Even prior to the 1981 amendment of plaintiffs' complaint, the parties had been directed to make pretrial submissions, and plaintiffs had in fact done so. In requesting leave to amend their complaint, however, plaintiffs represented that they would make an amended pretrial submission, and allowance of the motion for leave to amend was accompanied by a direction that, following the filing of an answer, plaintiffs make an amended pretrial submission.

Plaintiffs did so January 11, 1982. That submission affirmatively asserted that CMI's amended tax return for the fiscal year ending February 29, 1972, as filed in 1974, "is correct and complete." There was no direct response to the government's claim of right to an offset based on an understatement of CMI's ending inventory for 1972, and there was certainly no mention of possible error in CMI's *beginning* inventory for its fiscal year ending February 29, 1972.[7]

By motions, filed January 28, 1982, defendant sought (1) a separate trial of the issue raised by its offset defense (*i.e.*, the asserted understatement of CMI's *ending* inventory for its fiscal year ending February 29, 1972, and its impact upon plaintiffs' federal income tax liability for 1972); and (2) an order placing the burden of proof with respect to that issue (termed "the inventory issue") on plaintiffs. *See* n. 1, *supra*. In allowing both motions, the court explicitly defined the issue to be tried separately as that stated above, adding that "The controversy in reality is limited to whether CMI's ending inventory for the fiscal year ending February 28 [sic], 1972, was understated as (and to the extent) defendant alleges; there is no doubt but that, if so, plaintiffs cannot recover in this action." Trial of the case on "the inventory issue" (as so defined) was set to commence May 17, 1982.

---

5. The record suggests that the refund claim for 1972 had not been examined when filed.

6. Defendant withdrew its counterclaim following the payment.

7. Plaintiffs did assert that a reported change in cost of goods sold on CMI's amended 1972

return (attributable in part to including therein alleged purchases from Nissho of $52,340.41 that had not been included in cost of goods sold on CMI's original 1972 tax return) was proper. Defendant's position was and is that both returns overstated purchases. This phase of the matter will be treated hereinafter.

Defendant's subsequent pretrial submission relating to the inventory issue alleged (among other things) that CMI's ending inventory was erroneously understated in both its original and amended returns for 1972, and that, at the end of its fiscal 1972 year, CMI had inventory valued at $483,725. Parenthetically, it should be noted that this position has since been revised to take into account CMI's inventory valuation method described above. Plaintiffs' response thereto, at the end of April 1982, was that with respect to inventory the relevant returns embodied a method that "does truly reflect income" and was "correct." Again, there was no suggestion of a possible claim of an understated beginning inventory for fiscal 1972.

Trial was held in Spokane, Washington, during the period May 17–19, 1982.[8] At that trial, it became clear that in reporting its ending inventory for the fiscal year ending February 29, 1972, on both its original and amended federal tax returns, CMI had not included any of its Seattle inventory. The record includes a physical inventory count, dated January 3, 1972, of CMI's inventory at Spokane. The materials reflected on that inventory count were valued by Mr. Barrier at $74,768. The ending inventory of $37,384 reported by CMI in both its original and amended federal tax returns for 1972 represented *only* CMI's inventory at Spokane—as of January 3, 1972—valued under the 50 percent valuation method described above. CMI's ending inventory at Seattle was not reported on its 1972 tax return at all.[9]

Mr. Barrier readily conceded that CMI's ending inventory for its fiscal year ending February 29, 1972, was substantially greater than the $37,384 in ending inventory reflected on both CMI's original and amended federal tax returns for 1972. In this connection, it is worthy of note that a document prepared by Mr. Barrier, and captioned "Assets of John Barrier," [10] reflects that, as of January 31, 1972, CMI's inventory, at both Spokane and Seattle, was valued at $483,725. Even reducing that figure by 50 percent in accordance with the method utilized by CMI in valuing inventory for federal income tax purposes, CMI's inventory as of January 31, 1972 would still be $241,862, far in excess of that reported on both CMI's original and amended 1972 federal income tax returns.

Plaintiffs' present factual position[11] is, rather, that the government's view of the value of CMI's ending inventory for the fiscal year ending February 29, 1972,[12] is exaggerated; and that, when CMI's net income for that period is "adjusted" to take into account a proper ending inventory at Seattle as of February 29, 1972,[13] appropriate revisions of CMI's accounts payable (and cost of goods sold) for the relevant period, and rectification of an alleged understatement of CMI's *beginning* inventory for the fiscal year ending February 29, 1972, CMI's reported net income for that fiscal year was in fact overstated. Thus, plaintiffs conclude, defendant's offset defense should be rejected *in toto,* and the

8. In a "Trial Memorandum on Inventory Issue," handed to the court on the morning of May 17, 1982, plaintiffs still made no assertion that CMI's beginning inventory for fiscal 1972 had been erroneously reported.

9. Parenthetically, it cannot be found that CMI's *Spokane* inventory—as of February 29, 1972—was correctly reported.

10. On brief, plaintiffs renew the argument that this evidence should not have been admitted, because the Tax Court, in a proceeding involving other taxable years, failed to admit a similar, but unauthenticated, document. The notion that a ruling in that proceeding somehow "collaterally estops" this court with respect to clearly authenticated and relevant proof is spe-

cious. Moreover, a document taken from Mr. Barrier in 1977, under circumstances not here challenged, also contains the same information stated in the text.

11. Plaintiffs also advance several legal arguments, discussed hereinafter. None of these arguments has any merit.

12. Defendant's view is, of course, based on Mr. Barrier's own statement respecting CMI's inventory as of January 31, 1972.

13. For purposes of the argument no adjustment to CMI's inventory of $37,384 at Spokane (the only part of CMI's inventory that was reported for federal tax purposes) is proposed.

court should proceed to trial on the merits of plaintiffs' claims herein.

## II

The validity *vel non* of plaintiffs' contention that CMI's income for 1972, when properly calculated, is actually less than the amount reported depends essentially upon the resolution of three issues, two of which are purely factual in nature. On a careful analysis of the facts and the law, each of these issues must be decided in favor of defendant.

The first issue is whether CMI's ending inventory for the fiscal year ending February 29, 1972, should be found to be understated to the considerable extent defendant (on the basis of Mr. Barrier's own statement) claims. The second is whether an upward adjustment in CMI's accounts payable (and cost of goods sold), with a corresponding decrease in the income reflected in CMI's amended return (and in plaintiffs' taxable income) for 1972 was proper, or whether, in fact, a downward adjustment and a corresponding increase in CMI's income (and plaintiffs' taxable income) for 1972 is appropriate. The third is whether any adjustment in CMI's *beginning* inventory for the fiscal year ending February 29, 1972, has been shown to be justified.

## A

■ In the circumstances of this case, plaintiffs bear the burden of proving, by a preponderance of the credible evidence, the dollar value of CMI's ending inventory for the fiscal year ending February 29, 1972. *Union Pacific R.R. v. United States,* 208 Ct.Cl. 1, 73, 524 F.2d 1343, 1382–83 (1975), *cert. denied,* 429 U.S. 827, 97 S.Ct. 83, 50 L.Ed.2d 89 (1976); *Missouri Pacific R.R. v. United States,* 168 Ct.Cl. 86, 338 F.2d 668

(1964). On this record, including as it does a January 31, 1972, document captioned "Assets of John Barrier" and reflecting the "Inventory's * * * Corrugated Metals Sea Spk Comb."), to be $483,725, and other evidence relating to CMI's ending inventory, plaintiffs have failed to establish in an acceptable manner that that dollar value was less than $241,862 (50 percent of the $483,-725 value listed in that document).

As plaintiffs assert, the record does contain a document, dated January 12, 1972, purportedly reflecting CMI's inventory at Seattle as of that date. That document does not indicate any values for the items reflected thereon. Prior to trial, Mr. Barrier did calculate an asserted inventory value (at 50 percent of alleged cost of $253,550) for such items of $126,775.[14] However, neither that document, nor anything else in the record, can fairly be said to prove that as of February 29, 1972, CMI's combined Seattle and Spokane inventories were in or even near the dollar amounts now claimed.

The Seattle inventory sheet, said to have been misplaced and then discovered only a week or so prior to the commencement of trial (as were, assertedly, other records, including one purportedly reflecting CMI's Seattle *beginning* inventory for the fiscal year ending February 29, 1972), is alleged to establish that CMI's ending inventory for that fiscal year was understated by only some $126,000 (and, with claimed adjustments, by some $109,000). The weight of the credible evidence is, however, otherwise. Plaintiffs bear the burden of proving the value of CMI's ending inventory for the fiscal year ending February 29, 1972, but have failed to do so. Accordingly, the ending inventory figure urged by defendant (on the basis of Mr. Barrier's own statement) is, for present purposes, to be accepted.[15]

---

14. Plaintiffs adjust the $126,775 figure downward (on a somewhat puzzling basis) for sales following January 12, 1972, but claim that no purchases occurred during the relevant period.

15. It must be and is recognized that Mr. Barrier's statement was dated January 31, 1972, some 29 days prior to the end of CMI's fiscal year. The record reflects, however, that the "inventory" documents relied upon by plain-

tiffs were dated January 3, 1972, and January 12, 1972, respectively. During a winter month such as February, CMI's inventory changes were generally quite modest. Nothing in the record suggests that February 1972 was an exception. There is, in fact, some evidence that CMI's February 1972 sales were on the order of no more than $25,000.

## B

■ Next to be considered is the treatment to be accorded what Nissho, CMI's principal metal coils supplier, described as "Holding Materials" on its accounts receivable ledger as of early March 1972.

In its original return for the fiscal year ending February 29, 1972, CMI reported purchases of merchandise for manufacture or sale of $903,856; that figure excluded some $52,340, characterized by Nissho as "Total Overdue Holding."[16] In CMI's amended return for that year, the purchases figure was increased to $941,708; that increase reflected, among other adjustments, the *inclusion* in purchases of merchandise for manufacture or sale (and cost of goods sold) of the entire "Total Holding" figure of $84,437 described in note 16, *supra.*

Defendant contends that CMI's purchases figure was overstated on both the original and amended returns for the fiscal year ending February 29, 1972, and that in calculating CMI's cost of goods sold (and income) the entire $84,437 should have been excluded.[17] Plaintiffs contend otherwise. On this record, however, plaintiffs have failed to establish by a preponderance of the credible proof that the "Holding Materials" covered by Nissho's accounts receivable ledger, with a total cost of $84,437, should be considered in determining CMI's purchases, and cost of goods sold, for fiscal 1972. The weight of the credible evidence is, rather, that those materials had neither been paid for by nor released to CMI, still belonged to Nissho, and as defendant contends, could not properly be included, in whole or in part, in CMI's purchases and cost of goods sold.

## C

■ The third issue is whether in the circumstances of this case plaintiffs may be heard to contend that CMI's *beginning* inventory for the fiscal year ending February 29, 1972, was understated.

The question of a possible error in CMI's beginning inventory for the fiscal year ending February 29, 1972, did not surface prior to trial in any way. Plaintiffs do not contend otherwise. What they do say is that "newly found evidence relevant to the inventory issue" came to light shortly prior to trial, and that the court's refusal to allow plaintiffs to raise the issue as of right at trial[18] is "manifestly unjust." There is no substance to this line of argument.

The so-called "newly found evidence" alluded to by plaintiffs consists basically of a document purporting to reflect CMI's inventory at Seattle, as of March 1, 1971. Mr. Barrier testified that shortly prior to trial he reviewed that document and determined therefrom that CMI's Seattle inventory as of that date had a value of $47,392 (and therefore, a cost of $94,784). It should be remembered that, as reported, CMI's beginning inventory for the fiscal year ending February 29, 1972, was $25,703. All of the materials encompassed in the latter figure (based, parenthetically, on a document captioned "SPO Stock 3–11–71") were in fact located in Spokane.[19]

There is no showing whatever that in 1973 when CMI's original return for the fiscal year ending February 29, 1972, was filed, in 1974 when its amended return for that year was filed, in 1976 when this action was filed, or even in 1981 and 1982, the alleged understatement in CMI's beginning inventory was in fact not known to Mr. Barrier. He must have known, and in any event can be properly charged with knowing, of the very substantial omission in CMI's income tax returns, particularly since

---

16. "Total Holding" at that time, per Nisshos's records, was $84,437; the total overdue holding figure was included in that sum.

17. An increase in purchases lowers profit (as does a decrease in ending inventory). A decrease in purchases has an opposite effect (as does an increase in ending inventory).

18. Plaintiffs were allowed to make a complete offer of proof with respect to the beginning inventory question.

19. Plaintiffs assert that the failure to report CMI's Seattle inventory was simply a "mistake of accountants."

he personally valued CMI's inventory.[20] That a document tending to prove the precise *extent* of the omission may not have been at hand when the government happened to raise the ending "inventory issue" does not mean either that the *fact* of the omission is a new one, or that the document tending to show its dollar impact is "newly found evidence."

The trial ruling declining to allow plaintiffs to endeavor to alter CMI's beginning inventory figure as reported in no way results in a "manifest injustice" to plaintiffs. One of the primary purposes of pretrial procedures, and of rulings of the kind made in this case prior to trial of the inventory issue, "is the elimination of surprise and unfairness to the other side." *Idzojtic v. Pennsylvania R.R. Co.,* 47 F.R.D. 25, 30 (D.Pa.1969). Another is to promote judicial efficiency. *Ohio-Sealy Mattress Mfg. Co. v. Kaplan,* 90 F.R.D. 35, 36 (D.Ill.1981). Such procedures, and rulings, are designed to promote the efficient, economical, and just trial of a case "without *chance or surprise.*" *Smith v. Ford Motor Co.,* 626 F.2d 784, 795 (10th Cir.1980), *cert. denied,* 450 U.S. 918, 101 S.Ct. 1363, 67 L.Ed.2d 344 (1981) (emphasis in original). *See also United States v. First National Bank of Circle,* 652 F.2d 882, 886 (9th Cir.1981).

This is a court of nationwide jurisdiction. Trial frequently does (and here did) involve travel by counsel for defendant and the court, for a considerable distance and at some expense, to accommodate plaintiffs and their witnesses. Prior to trial, plaintiffs were afforded the right to specify the issues of law and fact they deemed relevant, and the opportunity to be forewarned of those deemed relevant by defendant. Thereafter, the court, upon careful consideration of the positions of both parties, issued an order governing the scope of trial.

In these circumstances, adherence to the terms of that order is particularly important, and the burden of demonstrating that a departure therefrom is necessary to prevent manifest injustice "falls squarely on the moving party." *Smith v. Ford Motor Co., supra; see also United States v. First National Bank of Circle,* 652 F.2d 882, 886–87 (9th Cir.1981); *Hodges v. United States,* 597 F.2d 1014, 1016–18 (5th Cir.1979); *Ohio-Sealy Mattress Mfg. Co. v. Kaplan,* 90 F.R.D. 35, 36–37 (D.Ill.1981).

Plaintiffs fall far short of successfully discharging that very heavy burden. As early as August 1981, they were given fair notice that defendant intended to try to prove error in CMI's closing inventory for the fiscal year ending February 29, 1972. The court's order of February 26, 1982, specified that the scope of trial, to be held in May 1982, would be limited to that issue. Plaintiffs failed to advise either defendant or the court in advance of trial of any intent to raise any other issues, and even at trial offered no unknown facts or newly discovered evidence in support of their attempt to do so. In all the circumstances, plaintiffs are precluded from raising the beginning inventory issue in this litigation.

### III

From the foregoing, it follows that CMI's income for its taxable year ending February 29, 1972, as reported on its original tax return for that year, was understated by some $236,000 or so.[21] The ending inventory adjustment alone increases CMI's income by some $205,000, and the additional adjustment in cost of goods sold increases CMI's income to, or beyond, the substantial dollar figure stated.

That understatement in CMI's income resulted in an understatement of plaintiffs' taxable income for 1972 in a like amount, and in an underpayment of income tax for that year substantially in excess of the amount plaintiffs seek to recover in this action. In this situation there could be no affirmative recovery by plaintiffs in any

---

20. Mr. Barrier also signed both CMI's original and amended returns for 1972.

21. Definitive calculations are not really essential, in view of the relatively small amount plaintiffs seek to recover, and the magnitude of the understatement of CMI's 1972 income and the understatement and underpayment of plaintiffs' 1972 income and tax.

event. *Lewis v. Reynolds,* 284 U.S. 281, 283, 52 S.Ct. 145, 76 L.Ed. 293 (1932). Accordingly, the complaint will be dismissed.

IV

■ As noted hereinabove, plaintiffs have advanced a number of legal arguments in this case. Those arguments include the assertions that because CMI's inventories have not been "questioned" in proceedings before the United States Tax Court involving plaintiffs' income tax liabilities for the years 1973–1975, this court is "quasi-estopped from considering this issue"; that no "deficiency can be sustained" with respect to the inventory issue because of a claimed violation of section 7605(b), said to limit the Internal Revenue Service to only one inspection of plaintiffs' records for any taxable year absent written notification to the taxpayer that an additional inspection is necessary; and that the admission of certain evidence—which has not been mentioned heretofore and need not be described—was erroneous.

The evidence in question was, in the opinion of the court, properly admitted, but in any event has not been given any consideration in reaching the factual conclusions stated above. Thus, even assuming error, it would be harmless.

■ This court is not "estopped" to consider and resolve the inventory issue. Under the doctrine of *res judicata* a final judgment on the merits bars further claims by parties, or their privies, based on the same cause of action. *Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Red Lake Band v. United States,* 229 Ct.Cl. ——, 667 F.2d 73 (1981). That doctrine is, however, plainly inapplicable. Under the doctrine of collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is con-

clusive in a subsequent suit based upon a different cause of action involving a party to the prior litigation. *Montana v. United States, supra; Red Lake Band v. United States, supra.* That doctrine too does not apply here, however, for plaintiffs make no showing that the inventory issue has been "actually and necessarily determined" in a prior case. Neither *res judicata* nor collateral estoppel operates to preclude defendant from raising (or the court from deciding) the inventory issue here.

*Union Carbide Corp. v. Commissioner,* 671 F.2d 67 (2d Cir.1982), said by plaintiffs to require a contrary result, does not do so. In that case, the government was held estopped "from relitigating with the same taxpayer the precise issue on which [it] has already lost for a prior year." *Id.* at 68. As that decision makes clear, the government can, in an appropriate case, be held collaterally estopped from relitigating a particular issue, but that case is inapposite here. No sound basis for precluding the raising of the inventory issue is stated, or appears.[22]

Plaintiffs' contention that no "deficiency can be sustained" because of an asserted violation of the provisions of section 7605(b) is erroneous. On the facts of this case, no improper reaudit, nor any violation of section 7605(b), has been shown. *Lewis v. Reynolds, supra; Dysart v. United States,* 169 Ct.Cl. 276, 340 F.2d 624 (1965). Even had such a violation occurred, however, plaintiffs waived any objection to examination of their (or CMI's) books and records, and may not now be heard to complain. *United States v. Baker,* 451 F.2d 352 (6th Cir.1971) and cases there cited. *See also Field Enterprises, Inc. v. United States,* 172 Ct.Cl. 77, 85–86, 348 F.2d 485, 490–491 (1965), *cert. denied,* 382 U.S. 1009, 86 S.Ct. 614, 15 L.Ed.2d 525 (1966); and cases there cited.

22. It is not entirely clear whether plaintiffs' estoppel argument rests upon the Internal Revenue Service's failure to question CMI's inventories in a Tax Court proceeding, upon the Service's failure to question those inventories during audit, or upon both. Under any possible interpretation, however, the argument lacks merit. *See Lewis v. Reynolds,* 284 U.S. 281, 283, 52 S.Ct. 145, 146, 76 L.Ed. 293 (1932); *Dysart v. United States,* 169 Ct.Cl. 276, 340 F.2d 624 (1965).

V

Plaintiffs' many arguments have been carefully considered, but are unavailing. On this record, the complaint herein must be dismissed.